FROST *against* WOOD.

THIS was an action of *assumpsit* on a promissory note of the following tenor : " Six months after date, I promise to pay *Zebulon Frost*, or order, two hundred and fifty-one dollars, value received, with interest.

" City *Hartford*, 19th *May*, 1814.

" For *Benjamin Wood*,
" *Abner M. Warriner*."

The plaintiff claimed, that the note was given for money borrowed for the defendant's use. The only evidence of *Warriner's* authority to bind the defendant, was contained in the following letter of attorney, executed by *Wood* :

" This may certify, that I, *Benjamin Wood*, of the city and county of *Hartford*, state of *Connecticut*, do hereby invest and empower *Abner M. Warriner*, of said *Hartford*, with full power to purchase any articles, for the use of my cotton factory, which is now erecting in said town of *Hartford* ; and I do hereby agree to become responsible for all contracts made and entered into by him the said *Warriner*, for machinery and cotton for the use of said factory, in the capacity of agent ; and I do further agree, that the said *Abner M. Warriner* shall have the agency of said factory, for the term of five years from the date hereof ; and I do further agree to allow him two and a half *per cent.* commission for all purchases, and on all sales of goods made for the factory, and two *per cent.* on the weaving of all cloth manufactured by said factory.

" *Benjamin Wood*."

the former, within the term, and to effect the object, of his agency.

Where *A.*, the proprietor of a cotton factory, gave a letter of attorney to *B.*, conferring on him the agency of the factory for the term of five years, empowering him to purchase any articles for the use of the factory, and engaging to become responsible for all contracts entered into by him in the capacity of agent, for machinery and cotton for the use of the factory ; it was held, that *A.* was liable on a promissory note given by *B.*, as the agent of *A.*, and in his name, for money borrowed by

Frost
*v.*
Wood.

The defendant claimed, that *Warriner* was not, by virtue of said letter of attorney, authorized to borrow money on the defendant's credit. The court charged the jury, that by virtue of said letter of attorney, *Warriner* had power to borrow money for the defendant, and to execute a note therefor, so as to bind the defendant for the payment thereof, when such money was borrowed pursuant to the power given to *Warriner*, and for the object and business of his agency. The jury found a verdict for the plaintiff. The defendant moved for a new trial on the ground of a misdirection ; and the motion was reserved for the consideration of all the Judges.

*Trumbull*, for the defendant, contended, that *Warriner* had no power to bind *Wood* by any acts other than those specified in the letter of attorney. The acts specified are, *to purchase machinery, cotton, and other articles for the use of the factory.* No power is given to pledge *Wood's* credit for *money.* There might be many reasons why such power should be withheld. Money, if obtained, might easily be converted to the agent's private use. Disputes might arise as to the manner in which it had been applied. In the present case, money was borrowed, and a note given. Does the validity of the note depend upon the intent of the agent ? Then the principal may be liable, although the money may not have been invested in articles for the use of the factory. Does the liability of the principal depend upon the due application of the money borrowed ? Then the note is not valid at its execution ; but its validity will depend upon the subsequent acts of the agent.

Does the description of *Warriner* as agent, extend his power under the letter of attorney ? Authority to do a single act renders him an agent. The acts which he is to do are specified, and his compensation fixed. He is thus made agent, whether he be expressly so called, or not. That he is so called, cannot extend his authority.

*T. S. Williams*, contra, stated the facts. The argument for the defendant is, that *Warriner* might give a note for *materials*, but not for *money* to purchase the same materials. We contend, that by authorizing *Warriner* to procure articles, *Wood* invested him with authority to procure the ne-

cessary means. The object is evident, and the means of obtaining it need not be specified. *Howard & al.* v. *Baillie,* 2 *H. Black.* 618.

*New-Haven,*
November,
1816.

Frost
*v.*
Wood.

SWIFT, Ch. J. The question is as to the extent of the power of attorney. This gave a special authority to purchase articles for the cotton factory, with an agreement to be responsible for all contracts for machinery and cotton for the factory, and a general power of agency. Such power must be construed according to the apparent intent of the parties, so as to accomplish the object contemplated. No express power is given to borrow money. If that should become necessary, to perform the duty of the agency, it will be implied. Indeed, an unqualified power to purchase, must imply the power to procure the means of making payment. If the necessary articles could not have been obtained without money, he must have the power to borrow it, to enable him to execute his agency ; and he may as well borrow money in the name of the principal, and render him liable for it, as to purchase the necessary articles on his credit. This power of agency, then, gave the power of borrowing money, to execute the trust reposed in the agent.

I am of opinion that the charge was correct, and that a new trial ought not to be granted.

HOSMER, J. The letter of attorney authorized *Warriner* " to purchase any articles for the use of *Wood's* cotton factory," and conferred on him " the agency of it for five years." Under this authority, he borrowed money, and gave a promissory note for it, as attorney to *Wood,* and in his name. Was this note obligatory on his principal ?

As a general agent, he had the management of this part of his principal's business. *Fenn & al.* v. *Harrison & al.,* 3 *Term Rep.* 760. In the prosecution of the employment confided to him, a general agent may borrow money, and bind his principal in the modes of security usual in such cases. He who commands the end, authorizes the requisite means.

The power specially delegated, likewise, authorized the execution of the note. *Warriner* was empowered to purchase every thing requisite for the factory. It might happen, that an article was of indispensable necessity, and could not

*New-Haven,*
November,
1816.

Frost
*v.*
Wood.

be procured, unless by the payment of money. Under this and similar circumstances, shall we infer that it was the intention of *Wood* that his agent should borrow the requisite sum, or that there should be an entire cessation of the business confided to his management? If regard be had to the interest of the principal, and the object he had in constituting the agency, there can be no difficulty in answering this question.

It is admitted, that *Warriner* might purchase any article for the factory, and pledge his principal for the payment of it. What greater trust was necessary to authorize his borrowing the money, and having executed a note in the name of his principal, to employ the sum in the specified purchase? " Powers of attorney must be so construed as to include all the necessary means of executing the authority with effect." *Howard & al.* v. *Baillie & al.*, 2 *H. Black.* 618. 620. This principle, founded on the plainest dictates of common sense, clearly warrants the construction given.

GOULD, J. I fully concur in the opinion, that a new trial ought not to be granted. As a general proposition, it will not probably be denied, that a power created for a definite purpose, involves, of course, unless restrained by some plain qualification, an authority to use all the ordinary means, that may be necessary to accomplish that purpose. This doctrine is fully established in the case of *Howard & al.* v. *Baillie & al.* 2 *H. Black.* 618., with which that of *Gardner* v. *Baillie,* 6 *Term Rep.* 591., does not, at all, interfere.

This single rule appears to me decisive of the present case. For, a general power to purchase articles for the principal, clearly implies a right to pledge his credit, in making the purchases, that may be necessary : Since it is not to be presumed, that any one would do so useless an act, as to give his agent a formal power to *expend* money, destined for a particular object, and actually in the hands of the agent. In this case, however, there is no need of resorting to so general a principle : For the defendant expressly agrees, in the power of attorney, " to become *responsible* for all contracts," to be made by *Warriner,* for machinery, cotton, &c.

But it is said, that the agent, though he had power to pledge the credit of the defendant, by a direct purchase of those articles, could not bind him by *borrowing* money, with

which to purchase them. Now, if the articles were such as the power contemplated,—if *Warriner* was not in funds, to pay for them, and if he could not purchase them advantageously on credit,—(and all this in substance is admitted ;) the borrowing of money to procure them, seems plainly to have been one of the necessary means of procuring them, and therefore, one of the means necessary to the execution of the power. If *Warriner* had procured the *plaintiff* to purchase the same articles, by advancing the money, and had then purchased them directly from the plaintiff, on the defendant's credit ; it seems agreed, that the defendant would have been bound. But the difference between that case and the present, is merely formal. The substance of the transaction, and the effect of it, in the one case, would have been, as to all the parties concerned, exactly the same, as in the other ; the only difference would have consisted, in an unessential and unnecessary circuity in the form of the purchase. Such a difference cannot, surely, alter the merits of the case.

*New-Haven,*
November,
1816.

The other Judges were of the same opinion.

New trial not to be granted.